UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JASON LAMOUNTE MORGAN** <br> **D.O.C. # 590378** | : | **DOCKET NO. 16-cv-265** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Jason Lamounte Morgan ("petitioner") [doc 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Darrel Vannoy ("respondent"), warden, has responded. Doc. 11.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

# I.
## BACKGROUND

### A. Conviction

The petitioner was indicted in the 14th Judicial District, Calcasieu Parish, Louisiana, on one charge of second degree murder.[1] Doc. 11, att. 2, p. 124. The indictment related to the shooting death of Roy Wyatt ("victim"). Doc. 1, att. 2, pp. 3–4. The petitioner received a jury trial and was convicted of second degree murder on September 22, 2011. Doc. 11, att. 3, p. 56.

### B. Direct Appeal

The petitioner appealed his conviction and to the Louisiana Third Circuit Court of Appeal. *State v. Morgan*, 2013 WL 455179, *1 (La. Ct. App. 3d Cir. Feb. 6, 2013) (unpublished). There he raised the following assignments of error:

1. The evidence was insufficient to support the conviction.
2. The trial court erred in denying the defense's motion to exclude videotaped statement of deceased witness Duncan Barfield.
3. Prejudicial error occurred when the state failed to produce Wayne Jones, a witness, at trial.
4. The trial court erred in preventing the defense from questioning witness Jeremy Wyatt about his involvement in drug-related activities.

*Id.* at *3–*11. The Third Circuit reviewed these claims on the merits and denied relief. *Id.* The petitioner then sought review in the Louisiana Supreme Court, which review was denied on October 4, 2013. *State v. Morgan*, 122 So.3d 552 (La. 2013). The petitioner did not seek review in the United States Supreme Court. Doc. 1, p. 4.

---

[1] The petitioner was also charged with obstruction of justice, which the state subsequently dismissed. Doc. 11, att. 2, p. 235.

### C. State Collateral Review

The petitioner then filed a pro se application for post-conviction relief in the trial court on December 2, 2013. Doc. 11, att. 10, pp. 78–100. His sole claim for relief therein was that he received ineffective assistance of counsel when his attorney failed to seek a supervisory writ on the trial court's denial of the defense's Motion to Exclude. *Id.* at 89–93. The trial court denied relief pursuant to LA. C. CR. P. art. 930.4, based on the fact that the merits of the Motion to Exclude had already been fully litigated on appeal. *Id.* at 147–48.

The petitioner sought review in the Third Circuit which affirmed the trial court's ruling. *Id.* at 156. He then sought review in the Louisiana Supreme Court, which review was denied on October 2, 2015. *State ex rel. Morgan v. State*, 178 So.3d 583 (La. 2015).

### D. Federal Habeas Petition

The instant petition was filed on February 24, 2016. Doc. 1, att. 1, p. 26. Here the petitioner raises the following claims for relief:

1. The evidence was insufficient to support the conviction
2. The trial court erred in denying the petitioner's motion to exclude the videotaped statement of Duncan Barfield.
3. Prejudicial error occurred when the state failed to produce Wayne Jones at trial.
4. The trial court erred in preventing the defense from questioning witness Jeremy Wyatt about his involvement in drug-related activities.
5. The petitioner was denied effective assistance of counsel based on his trial attorney's failure to seek a supervisory writ on the trial court's denial of his Motion to Exclude.

*Id.* at 6–24.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is only tolled, however, while applications for state review are pending and not between resolution of state review and the filing of the federal habeas application. *See Carey v. Saffold*, 122 S.Ct. 2134, 2138 (2002). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[2] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

## C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[2] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 850 (2005), quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519–20 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a

different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. *Timeliness*

Here the petitioner's conviction became final on January 3, 2014, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Because he filed his application for post-conviction relief before that date, on December 2, 2013, no time was counted toward his one year limit. The clock instead began to run with the conclusion of state court review of said application on October 2, 2015, until the filing of the instant petition on February 24, 2016. Thus only **145 days** were counted against the one year limit, making the instant petition timely.

### B. *Exhaustion of State Court Remedies and Procedural Default*

All of the claims raised above were exhausted in the state courts. The first four claims were also reviewed and denied on the merits, so there is no procedural bar. The petitioner's application for post-conviction relief was denied by the trial court under LA. C. CR. P. art. 930.4, with the Third Circuit affirming the ruling on the same grounds. However, Fifth Circuit jurisprudence holds that this article is not grounds for traditional procedural default and therefore creates no bar to federal habeas review. *Bennett v. Whitley*, 41 F.3d 1581, 1582–83 (5th Cir. 1999). Accordingly, all claims raised in the instant petition are properly before this court.

### *C. Substantive Analysis*

Having determined that all claims are properly before this court, we now review them on the merits under the standards described above.

### *1. Sufficiency of Evidence*

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

Here the petitioner was convicted under Louisiana state law, which defines second degree murder in pertinent part as a homicide committed "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." LA. REV. STAT. § 14:30.1. Specific criminal intent is "that state of mind which exists when circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LA. REV. STAT. § 14:10(1). Under Louisiana law, specific intent need not be proven as a fact but can instead be inferred from the circumstances. *State v. Bernard*, 734 So.2d 687, 689–90 (La. Ct. App. 3d Cir. 1999).

Here the subject homicide arose from a dispute over a bicycle. The petitioner's brother, Darren Morgan, lived with a roommate, Duncan Barfield, in a house next door to the victim. Doc. 11, att. 4, pp. 190–91. Martha Vital, a friend of Duncan Barfield and the victim, testified that Barfield had given the victim a bicycle frame and she had given him bicycle tires. *Id.* at 203–04.

Darren Morgan believed that the bicycle was his and had threatened the victim over it, according to Vital and Jeremy Wyatt, the victim's son. *Id.* at 204, 124.

Jeremy Wyatt testified that, three days after Darren Morgan made these threats, he went back to the victim's house and began to argue with the victim. *Id.* at 111–12. The petitioner arrived at the scene and began urging his brother to fight the victim. *Id.* at 113, 155. A fight then ensued between the victim and Jeremy Wyatt and the petitioner and Darren Morgan. *Id.* at 113.

After the fight was over, Jeremy Wyatt testified that the petitioner left, announcing that he was going to get a gun. *Id.* at 115. This testimony was corroborated by the victim's stepdaughters, Versa and Consuella Batiste, who were also residents of his house. *Id.* at 157, 170–71. Meanwhile, Martha Vital testified that the petitioner left while saying, "If that's how you want to do it, I'm-a show you how to do it." *Id.* at 194. Consuella Batiste and Jeremy Wyatt then testified that they next saw the petitioner coming around the side of a house with a gun which he aimed and then fired at the victim. *Id.* at 117–22, 172–73. The victim died of a gunshot wound to the trunk. Doc. 11, att. 2, pp. 154–56. Varica Coleman, who had met the petitioner shortly before the murder, testified that she picked up the petitioner and Darren Morgan from around the crime scene. Doc. 11, att. 4, pp. 225, 230.  She took them back to her house, where they smoked marijuana and the petitioner admitted to having shot someone. *Id.* at 230–32.

The petitioner bases his challenge on the credibility of the witnesses against him. In support he raises numerous allegations about the credibility of the witnesses listed above but provides no citation to the record for these. We have searched the record for the petitioner's allegations and address each point for which we have found support.

On cross-examination Jeremy Wyatt admitted that there was no record in the defense investigator's notes of their interview that he had actually seen the shooting, but maintained that

-10-

he had told the defense investigator otherwise. Doc. 11, att. 4, pp. 125–26. The defense investigator testified that Jeremy Wyatt told her he was standing across the street, on a basketball court behind another house, when the shots were fired. Doc. 11, att. 5, pp. 134–135. She also stated that Jeremy Wyatt said nothing about the petitioner being there at the time of the shooting. *Id.* at 135.

Consuella Batiste admitted that at the time of the shooting, she did not know the petitioner and only knew Darren Morgan by a nickname. Doc. 11, att. 4, pp. 168–69. During the trial she identified the petitioner as the man she had seen shoot her stepfather.[3] *Id.* at 175–76. She had been unable to identify him from a photo line-up the night of the shooting. *Id.* at 177–79. However, she testified that this was because there were two men in the line-up who looked too similar. *Id.* at 179–80. Finally, Consuella testified that she "got tired of talking to [the defense investigators] because [she] figured that they was for [the petitioner]." *Id.* at 182. Accordingly, she lied and told them that she was not supposed to talk to them. *Id.*

The defense investigator also described her interview with Varica Coleman. Doc. 11, att. 5, p. 135. She stated that Coleman had told her that the District Attorney's Office threatened to have her children taken away. Doc. 11, att. 5, pp. 147–48. The investigator also testified that Coleman was in love with the petitioner and told her that Darren Morgan had paid her to have charges dropped in an unrelated case. *Id.* at 150–52.

As trier of fact, the jury had broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Green v. Johnson*, 160 F.3d 1029, 1047 (5th Cir. 1998) (quoting *Jackson*, 99 S.Ct. at 2789). A federal court sitting in habeas review must respect this discretion, especially as it relates to the jury's ability to evaluate

---

[3] The petitioner also alleges that Versa Batiste testified that Consuella only went outside after the shots were fired. However, Versa's actual statement was: "[Consuella] handed me my baby and went outside. She was – when I heard the shots, my sister was outside." Doc. 11, att. 4, p. 160.

the credibility of witnesses. *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989); *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993). The petitioner's conviction signifies a finding of some credibility to the testimony of Jeremy Wyatt, Consuella Batiste, and/or Varica Coleman, that the petitioner had fired a deadly gunshot at the victim with specific intent to kill or commit great bodily harm. His challenges to various factors impacting their credibility are insufficient to subvert the deference due to the jury's ultimate finding of credibility and the Third Circuit's affirmation of same. Viewing their testimony in a light most favorable to the prosecution, there was ample evidence to support the conviction. Accordingly, the petitioner is not entitled to habeas relief under this claim.

### 2. *The trial court erred in denying the petitioner's motion to exclude the videotaped statement of Duncan Barfield.*

The petitioner claims that the trial court erred in admitting the videotaped statement of a deceased witness, thereby violating his rights under the Confrontation Clause of the Sixth Amendment.[4]

The United States Supreme Court has held that, under the Confrontation Clause, out of court testimonial statements by a witness may not be introduced against a criminal defendant unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*, 124 S.Ct. 1354, 1365–69 (2004). Shortly thereafter, the Court clarified that statements taken by police officers in the course of an interrogation are only nontestimonial when made "under circumstances objectively indicating that the primary purpose of the

---

[4] The respondent contends that admissibility of evidence is governed by state law on federal habeas review and argues exclusively on state law grounds. Doc. 11, att. 1, p. 35. In support she relies on review of a state court's denial of a motion for a new trial, which was challenged as an abuse of discretion and thereby as a violation of the petitioner's due process rights, in *Dickerson v. Guste*. 932 F.2d 1142, 1145 (5th Cir. 1991). *Id.* However, the allegation here is that the trial court violated a specific constitutional provision. Accordingly, we analyze the ruling under controlling federal precedent.

interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 126 S.Ct. 2266, 2273 (2006).

As the respondent points out, there is no indication that any videotape of Duncan Barfield was ever played at trial. Instead, his statements were referenced in the testimony of police officers describing the course of the investigation. Detective Gregory Single testified at a pretrial hearing that he interviewed Barfield at the crime scene on the night of the shooting, and that Barfield identified the shooter "as a black male [who] goes by the nickname of Black." Doc. 11, att. 3, pp. 97–98. The trial court deemed the statement admissible, ruling that it was not offered to prove the truth of the matter asserted but instead to show why the police took the investigative steps that ensued. *Id.* at 104–14. Accordingly, at trial Officer Bendy Falcon testified that he arrived at the scene shortly after the shooting, where Barfield identified the shooter as a person who went by the name "Black." Doc. 11, att. 4, p. 43. The state briefly referred to this testimony at closing argument, noting that "[t]he suspect the police found, after their discussions with Barfield, was 'Black,' okay?" Doc. 11, att. 6, p. 126.

There is no indication that the defense had any opportunity to interview Barfield, who passed away before the trial and the respondent does not contend that these statements could be construed as nontestimonial. Thus it appears that the introduction of Barfield's brief statements violated the petitioner's right to confront the witnesses against him, assuming *arguendo* that the trial court's justification fails. However, as the respondent points out, this error does not invite federal habeas relief if the respondent can show that the error was harmless. *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004). If the reviewing court determines beyond a reasonable doubt that the error was harmless, then the petitioner is not entitled to relief. *Delaware v. Van Arsdall*, 106 S.Ct. 1431, 1438 (1986).

Here, as the Third Circuit determined, the introduction of Barfield's statement at trial offered at most a negligible contribution to the weight of evidence against the petitioner.

> The state presented the testimony of two eyewitnesses, Jeremy Wyatt and Consuella Batiste, who both positively identified [the petitioner] as the shooter. Another witness, Varica Coleman, stated that [the petitioner] confessed to her that he was the shooter. Moreover, Judge Wilford Carter had already told the investigators that "Black" was Jason Morgan, the brother of his handyman, Darren. Further, the investigators had received a description of a vehicle that they were able to match to an El Camino owned by the [petitioner].

*Morgan*, 2013 WL 455179 at *7.

There is no basis for concluding that the references to Barfield's brief statement made any difference to the verdict. Accordingly, the error was harmless and the petitioner is therefore not entitled to federal habeas relief under this claim.

### 3. *Prejudicial error occurred when the state failed to produce Wayne Jones at trial.*

The petitioner next contends that the state violated his Sixth Amendment right to compulsory process by failing to produce a witness, Wayne Jones, and then denying the petitioner's motion for a new trial based on the defense's discovery that Wayne Jones was in the Calcasieu Parish Prison at the time of trial. As the respondent points out, there is nothing in the record to suggest that the state prevented the petitioner from locating Jones or procuring his presence at trial.

At a bench conference before closing arguments, the prosecutor stated for the record that he had informed defense counsel "during one of the breaks that Wayne Jones was in the Calcasieu Parish Jail." Doc. 11, att. 6, p. 53. Defense counsel confirmed this during the hearing on his motion for a new trial, which was filed on the basis of newly discovered evidence. *Id.* at 175; *see* doc. 11, att. 3, pp. 67–73 (citing La. C. Cr. P. art. 851).

Defense counsel made no motion to continue or recess the trial while he met with Wayne Jones. Thus there is no basis for concluding that the state prevented the petitioner from obtaining compulsory process for Wayne Jones. There is also no support for the notion that a new trial ought to have been granted. Article 851 provides that "[n]ew and material evidence" may provide basis for a new trial, but only if it was not discovered before or during the original trial. Here the record shows that Jones was located during the trial, before the defense had rested. Accordingly, the petitioner is not entitled to federal habeas relief under this claim.

### 4. *The trial court erred in preventing the defense from questioning witness Jeremy Wyatt about his involvement in drug-related activities.*

The petitioner next contends that his constitutional rights to present a defense and confront the witnesses against him were violated when the trial court prevented him from questioning witness Jeremy Wyatt about his drug-dealing activities. He alleges that Jeremy Wyatt identified the petitioner as the shooter, rather than Darren Morgan, "because Darren was his customer and could implicate him in drug activity." Doc. 1, att. 1, p. 16.

The right of confrontation is part of the criminal defendant's constitutional guarantee of "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 126 S.Ct. 1727, 1731 (2006). This guarantee is impermissibly abridged "by evidence rules that infringe upon a weighty interest of the accused **and** are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (emphasis added). However, the right of confrontation "does not guarantee defendants cross-examination to whatever extent they desire." *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."

*Van Arsdall*, 106 S.Ct. at 1435 (1986). Furthermore, as shown above, Confrontation Clause violations are subject to harmless error analysis on habeas review.

At a pretrial hearing Jeremy Wyatt was subject to cross-examination by defense counsel. There he admitted that he had been arrested for marijuana possession. Doc. 11, att. 3, p. 124. He vehemently denied any involvement in drug-dealing activities. *Id.* at 123–24. He also denied knowing Darren Morgan before the shooting. *Id.* at 125–26. The defense then called its investigator, Dawn Kelly, as a witness. Kelly testified that Darren Morgan, who had invoked his Fifth Amendment right against self-incrimination and was refusing to testify, had told her that "there was drug dealing activity going on between Roy Wyatt, Sr., Jeremy Wyatt, Duncan Barfield, and Darren." *Id.* at 128–31. She also stated that Jeremy Wyatt had told her that he knew Darren as a neighbor and a drug dealer. *Id.* at 132. However, there was no corroboration offered for Kelly's testimony. Accordingly, the trial court was within its discretion to exclude the topic on the basis of relevance and being insufficiently probative. There is no basis for federal habeas relief under this claim.

### 5. *The petitioner was denied effective assistance of counsel based on his trial attorney's failure to seek a supervisory writ on the trial court's denial of his Motion to Exclude.*

The petitioner alleges that he was denied his constitutional right to assistance of counsel when the defense failed to seek a supervisory writ on the trial court's denial of his Motion to Exclude Videotaped Statement of Duncan Barfield.

As shown above, there is nothing in the record to show that videotaped statements from Barfield were admitted. Instead, the trial court ruled on the admissibility of statements through the testimony of two police officers. Doc. 11, att. 3, pp. 104–14. After this ruling, defense counsel indicated that he might seek an emergency writ but apparently decided not to do so. *Id.* at 114.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

Assuming *arguendo* that there was some merit to the writ trial counsel would have sought, the petitioner still fails to show sufficient prejudice to satisfy *Strickland*'s second prong. As shown above, there is no basis for concluding that the references to Barfield's brief statement made any difference to the verdict. Accordingly, the petitioner is not entitled to relief under this claim.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 7 September 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE